W. S. McKINNEY v. JAMES U. GRANT *et al.*

No. 15,210.   (93 Pac. 180.)

SYLLABUS BY THE COURT.

WRITTEN AGREEMENT—*Construction—Consignment to an Agent and Not a Sale.* The contract copied in the statement of facts is held to be an agreement providing for the consignment of musical instruments by the presumptive owner thereof to an agent for sale, and not a contract of sale and purchase.

Error from Geary district court; OSCAR L. MOORE, judge. Opinion filed December 7, 1907. Reversed.

STATEMENT.

W. S. McKINNEY brought this action against James U. Grant and A. A. Flower by filing an ordinary petition in replevin to recover two pianos. The defendants joined issue by a general denial. The plaintiff claimed that he had the title and right of possession to the pianos, and that he had placed them in the possession of one W. J. Shillito for the purpose of sale only, in accordance with the terms of a written contract, a copy of which is as follows:

"December 9, 1902.
*"The McKinney Music Company:*

"GENTLEMEN—I will take your pianos and organs on consignment for Junction City, Kan., and vicinity, to be accounted for at agreed prices, and upon the following conditions:

"(1) The instruments and proceeds of sale are your

property, subject to your order and free from any claim whatsoever. I agree to take good care of all instruments consigned to me and to be responsible for the safe-keeping of the same; also to keep them insured for your benefit, with the policies made payable to you in case of loss, to an amount not less than the consignment price of same.

"(2) I agree to send the cash to you for each and every instrument separately, as soon as sold.

"(3) I agree to furnish all necessary funds for the payment of freight charges and other expenses connected with the handling of your goods, or expense incurred on account of your having consigned said goods to me, and will make no charge for repairing pianos or organs, or for such services as are for our mutual benefit, unless the charge be agreed upon and authorized in writing previous to the rendering of such service.

"(4) I agree to pay interest at eight per cent. per annum on all goods unsold and on hand after three months from date of shipment, but it is expressly understood that the charging of said interest and the payment thereof shall in no sense be construed as constituting a sale of said goods to me.

"(5) Upon your demand or that of your authorized representative I will deliver, as you may direct, free of charge or expense to you of any kind, including return freight to Cincinnati, all of said consigned goods remaining unsettled for at the time of said demand; I agree, in addition to returning the said stock, to pay you an amount for depreciation of value at the rate of eight per cent. per annum, from date of original shipment, on the consignment prices quoted on said stock.

"(6) On the first of each month I agree to send you a report of all instruments consigned and unsettled for, in stock and in the possession of prospective customers, giving the style and number of each instrument and its location, and will not expect orders for additional stock to be filled while such report is overdue. It is further understood that you reserve the right, without notice, to reject any request from me for consignments.

"(7) This agreement may be terminated at any time, by either party, by notice being given in writing of such termination.

"Accepted:   THE McKINNEY MUSIC Co.
          W. J. SHILLITO.

"In consideration of the above, and the modifications

or changes of the same, if any, and one dollar, I, or we, or either of us, guarantee that the said ——— will faithfully perform ——— part of the agreement, duly· account for all money, notes, contracts, and property ·of whatsoever nature belonging to the McKinney Music Company which may come into ——— hands, and further agree to hold, without litigation, the McKinney Music Company harmless from loss in their dealings ·with the said ———, my liability or our liability not to ·exceed ——— dollars. I or we, or either of us, hereby ·waive the benefit of all homestead and exemption laws. This guaranty to be valid and binding upon the party or parties executing the same without regard to their number.                       ——————— [SEAL.]
                                        ——————— [SEAL.]
                                        ——————— [SEAL.]"

The defendants, on the other hand, claim, and ˙the ·court, ruling on the demurrer of defendants to plaintiff's evidence, which it sustained, held, that the contract amounted to a sale of pianos by plaintiff to Shillito with the not unusual reservation of title as security for the purchase-price. A great deal of evi·dence, both oral and written, was introduced by both the plaintiff and the defendants, the transcript of ·which covers seventy-eight pages of the record.

Among the items of evidence the defendants intro·duced an admission of plaintiff's counsel, in substance ·that defendants became surety for a debt of $1525 to a bank and that to secure them against loss thereby ·Shillito (who had prior thereto sold a one-half interest ·in his business and stock of merchandise to one Day) gave them a bill of sale of his one-half interest in the ·stock of merchandise and accounts, and that defendants ·immediately took possession of the stock, including the ·two pianos in question, and thereafter the defendants ·bought of Day his undivided one-half interest in the stock, including the two pianos, and took possession ·thereof; also that the defendants had no knowledge of ·the written agreement, and the same was not recorded.

*James V. Humphrey,* for plaintiff in error.
*Roark & Roark,* for defendants in error.        –

The opinion of the court was delivered by

SMITH, J.: We are unable to agree with the construction of the written contract under which the pianos appear to have been consigned to Shillito in the written opinion filed in connection with the court's instruction to the jury to return a verdict for the defendants. On the other hand we see nothing therein, unless it be the agreement in the fourth and fifth paragraphs to pay interest on the value of the pianos upon certain contingencies, to indicate that the contract is other than the plaintiff claims for it—an arrangement under which the plaintiff could consign musical instruments to Shillito to be sold by him as the agent of the plaintiff. The provision requiring Shillito to pay interest on the value of the instruments, in certain contingencies, while perhaps unusual, is not sufficient to characterize the transaction as a sale in opposition to the expressed intention to the contrary and to several other provisions strongly indicating a contrary intention. The most that could be claimed for this provision for interest is that it rendered the contract ambiguous. It is evident from the whole contract, and especially considering the fifth paragraph thereof, that the word "interest" in the fourth paragraph was not used in the sense of rent for the use of money but was used to designate a compensation for the deterioration in the value of the instruments incident to being kept in stock and exposed to sale.

Viewed in this light, the contract is not ambiguous. It did not create the relation of creditor and debtor between the plaintiff and Shillito when the instruments were consigned and received under the contract, and no money indebtedness then existed as a principal upon which interest, in the ordinary meaning of the word, could be computed. Shillito, by the terms of the contract, was to send *the cash* (the cash received) for each instrument separately as soon as sold. This fairly im-

plies that the instruments were to be sold only in the usual course of trade, and for cash. That the contract does not prescribe the price at which the consigned instruments were to be sold is not unusual in a contract of this character, which contemplates the consignment of numerous articles of different values. In short, we interpret the contract to be an unambiguous agreement, and to be for the consignment of musical instruments by the presumptive owner thereof to an agent to sell for cash only, at prices to be agreed upon.

Shillito then had no title under the contract in the pianos in question, and no right of possession thereto which was not terminable by the demand of the plaintiff therefor. The defendants derived all their claims of right thereto from Shillito, and the stream cannot rise higher than its source.

The judgment of the district court is therefore reversed, and the case is remanded for further proceedings in accordance with the views herein expressed.