## AKIN, Sheriff, v. BALDWIN PIANO CO.

No. 7827—Opinion Filed Oct. 31, 1916.

Rehearing Denied Jan. 23, 1917.

(162 Pac. 221.)

**1. Trial—Withdrawal of Case—Question of Law.**

When, in the trial of a civil cause, the only issue disclosed by the evidence is one of law, it is not error for the court to withdraw the case from the jury, and render judgment upon such issue.

**2. Sales — Consignment—Conditional Sale— Construction of Contract.**

A contract examined, and held to create a consignment and not a sale.

(Syllabus by Johnson, C.)

Error from District Court, Blaine County; Will Linn, Assigned Judge.

Action by the Baldwin Piano Company against Lee Akin, Sheriff. Judgment for plaintiff, and defendant brings error. Affirmed.

R. B. Forrest and Foose & Brown, for plaintiff in error.

C. F. Dyer, for defendant in error.

Opinion by JOHNSON, C. Upon June 1, 1913, the Baldwin Piano Company and one Shaw entered into a written contract, in the form of a letter signed by Shaw and accepted by the piano company, by the terms of which Shaw was to engage in the business of the retail sale of the pianos of the company.

Upon June 22, 1914, Shaw placed with the piano company a written order for 14 pianos, upon the face of which order it was provided that the order was to be subject to the conditions noted on the reverse side thereof; and upon the reverse side of the order was printed the said agreement of June 1, 1913, which is as follows, to wit:

"The Baldwin Piano Co., Incorporated.

"St. Louis, Missouri, June 1, 1913.

"Gentlemen: The undersigned will take your instruments on consignment to be accounted for at agreed prices, and upon the following conditions:

"First. The instruments and proceeds of sale are your property, subject to your order and free from any claim whatsoever. The undersigned agrees to take good care of all instruments consigned and to be responsible for the safe keeping of same; also to keep them insured for your benefit, with policies made payable to you in case of loss, to an amount not less than the consignment price of same.

"Second. Commissions maturing from sales are to be in full payment of all services and expenses of whatsoever nature, and the undersigned will make no charge for repairing of instruments, for making collections when called upon to do so, or for any services which are for our mutual benefit, unless the same be agreed upon and authorized in writing previous to the rendering of such service; the undersigned agrees to pay all freight charges, taxes, expense of filing or recording contracts or mortgages including such attorney's fees as may be incurred thereon and all other expenses connected with the handling of the goods or expenses incurred by you on account of consigning instruments to the undersigned.

"The undersigned will be allowed as commission the difference between the price at which the instruments are sold and the price of the instruments to the undersigned, and prices are subject to change on notice. On all cash sales the undersigned shall immediately remit to you in cash for the instrument sold as per agreed prices and terms furnished by you. On time sales, the undersigned will send you the proceeds of the same, including notes, mortgages, contracts or leases, retaining the cash payment, provided this does not exceed the commission; the balance of the commission to be credited the undersigned as received by you from the customer after you have received the full amount due you in settlement for the instrument. The undersigned will not participate in any interest received on sales and commissions that do not bear interest.

"Third. All notes, contracts or leases taken for the sale of your goods shall be a lien on the instrument sold, made on your blanks, payable to you and subject to your approval acceptance. When a sale is made,

it is to be reported to you with proceeds at once, and where a sale is not satisfactory to you the undersigned agrees upon notice from you, and at your option, either to make it satisfactory at once, to take up the instrument, or to pay for it on demand.

"The undersigned guarantees all notes, contracts or leases and renewals of the same, waiving protest and notice of protest and nonpayment and agrees that the same shall bear 6 per cent. interest, and where they do not, the interest shall be computed for time to run and added to the consignment price of the instrument.

"Fourth. If default is made in the payment of any notes, contracts or leases, guaranteed as above, the undersigned agrees, upon your demand, to repossess or cause to be repossessed at the undersigned's expense any instrument for which such defaulted note or notes, contract or leases, were given in payment, and should the undersigned be unable to regain possession of such instrument to pay you in cash the entire amount due you on the same.

"Whenever an instrument sold on time is repossessed, it may be reconsigned at the original price and under original date, less the net amount received by you on the sale, said reconsignment otherwise to be subject to all the terms and conditions of this agreement. In case an instrument sold on time is repossessed and not reconsigned, undersigned agrees to pay all expenses incurred by you in making such repossession, together with depreciation and interest as provided in clause sixth.

"Fifth. It is agreed that commissions are not assignable or transferable without your written consent, and that you reserve a lien upon any sums due or to become due to the undersigned as security for any indebtedness to you, or for any liability to you, and you may, at your option, apply or set off any such sums so due or to become due, upon any such indebtedness, whether the same be due or not.

"Sixth. Upon your demands, or that of your authorized representative, or on the termination of this contract, the undersigned will deliver, as you may direct, free of charge, or expense to you of any kind, including return freights to St. Louis, all of said consigned goods not satisfactorily accounted for, including packing cases of same and in such case, in addition to returning the said stock, to pay you on the return price prevailing at the time of such return, interest at the rate of 6 per cent. per annum from date of shipment on any and all instruments returned.

"Seventh. The undersigned agrees to pay interest at the rate of 6 per cent. per annum on all goods unsold and on hand after 120 days from date of shipment, but it is expressly understood that the charging of said interest and the payment thereof shall in no

sense be construed as constituting a sale of said goods to the undersigned.

"Eighth. The undersigned agrees to send to you on the first of each month a report of all instruments consigned and unsettled for, in stock and in the possession of prospective customers, giving the style and number of each instrument and its location.

"Ninth. It is expressly understood that nothing in this agreement shall be in any sense construed as constituting a sale of said goods to the undersigned or as giving the undersigned an interest of any kind whatever in them; that this agreement is to be construed and executed according to the laws of the state of Ohio, no matter where signed; and that you reserve the right, without notice to reject any request for consignments.

"This contract may be terminated at any time by either party by notice to the other and is taken subject to the approval of the Baldwin Piano Co.     [Signed] C. D. Shaw.

"Conducting Business under the Firm Name of Shaw Music House.

"Witness:   W. R. Piper.
"Accepted:

"The Baldwin Piano Co.,
   "By O. S. Boyd.

"In consideration of the above and the modifications or charges of the same, if any, and one dollar, the undersigned hereby guarantees to the Baldwin Piano Co., or assigns, the faithful performance by said———— of the agreements mentioned in the above instrument. My or our liability not to exceed ———— dollars."

Upon the above order, tht piano company shipped to Shaw 14 pianos. As the pianos were about to be unloaded from the cars at Geary, Okla., the point of their final destination, Lee A. Akin, sheriff of Blaine county, levied upon them, as the property of Shaw, under an execution out of the district court of Canadian county to satisfy a judgment in that court against Shaw in the sum of $2,000. The Baldwin Piano Company, as plaintiff, filed the present suit in replevin in the district court of Blaine county, against the said Lee A. Akin, as sheriff, to recover possession of the pianos. At the trial in the lower court, it was the contention of the piano company that it was the owner of the pianos, and had merely consigned them to Shaw for sale by him as the agent of the company, under the above contract. It was the contention of the defendant that the said purported consignment agreement, in its own terms and as interpreted and acted upon by the parties thereto, constituted a conditional sale of the pianos to Shaw; and that the said contract, not having been filed of public record in the manner required of instruments

evidencing conditional sales, the retainer of title therein was void as against the execution creditor. In the trial of the case, at the conclusion of the evidence of plaintiff, both sides rested, and each party moved the court to direct the jury to return a verdict for himself. Whereupon the court withdrew the case from the jury, and rendered judgment for the plaintiff. Defendant presented his motion for a new trial, and brings the case to this court on appeal.

Plaintiff in error presents as his basic assignments of error: (1) That the court erred in taking the case from the jury; and (2) that the court erred in rendering judgment for the plaintiff; and these assignments eventually resolve themselves into two propositions, viz: (1) That there was an issue of fact of sufficient strength to have required submission to a jury; and (2) that, if only an issue of law remained, to wit, a legal construction of the consignment agreement, the court erred in its conclusion that the agreement·constituted a consignment to an agent and not a conditional sale. With these contentions, we are unable to agree.

As to the proposition that the court erred in not submitting the case to the jury, the rule as laid down by this court is:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith." Moore v. First Nat. Bank, 30 Okla. 623, 121 Pac. 626; Bank v. Gaskill, 44 Okla. 729, 145 Pac. 1131.

In this case, it is clear that at the conclusion of the evidence no issue of fact remained for determination. There was only the evidence of the plaintiff, which consisted of the written contract, written orders and communications between the parties to the contract, and oral testimony as to the execution of the contract and the manner of dealing between the parties under the contract. There was no conflict in this evidence. Plaintiff in error, in his brief, states that the pianos were shipped under the written contract; and he points to no evidence tending to show that the parties had departed from the terms of the contract, with one possible exception, viz., a small part of the cross-examination of Shaw as follows:

"Q. Your custom was to keep the piano in stock, and when you would sell it you would send the company the money for it? A. Yes,

sir; that is the contract; when I sold a piano, I would settle for it. Q. That is the way you understood the contract? A. Yes, sir. Q. They simply held the title to this property in order to secure them for the payment of that money? A. Yes, sir. Q. And that is the way you understood it? A. Yes, sir."

From the other testimony of the witness, it is clear that he did not understand that he was testifying according to the construction plaintiff in error gives these words. And, yet, assuming that he did so understand and mean them, his actions under that testimony would not be in conflict with the terms of the contract, and his oral testimony as to his understanding, not communicated to, concurred in, or acted upon by the other party to the contract, could not vary the effect of the written contract. He testified to a conclusion, which it was within the province of the court to draw. Leaving the contract, as evidence, out of consideration, the other evidence only tended to establish the contract and acts pursuant to its terms; and from the entire evidence there was no issue of fact discernible. The issue solely remaining was a legal construction of the contract and the acts of the parties; and the court did not err in taking such issue from the jury.

The trial court did not err in its construction of the written contract. We can see in it only a consignment of property to an agent, and not a conditional sale. Plaintiff in error argues that certain of its terms are in conflict with the theory of a consignment, and of such a nature as to make it a contract of conditional sale while professedly a consignment; but we cannot see it thus. It specifically states that it is not a sale, but a consignment; it specifically provides that on all time sales, notes, mortgages, or leases are to be taken to the company on its blanks; that the company owned all property consigned under it; and that consignee owned no interest in such property, except that, until such right was withdrawn by the company, he might sell the property at not less than a fixed price and account to the company for this price. or buy and pay for the property himself. It specifically provided, further, that the contract might be terminated at any time by either party, and that upon such termination of the contract. or upon demand of the company, all consigned property should be returned to the company. No word among its multitudinous expressions annuls any of these provisions.

In the case of Van Arsdale v. Peacock, 90 Kan. 347, 133 Pac. 703, the Supreme Court

of Kansas construed what appears to have been almost this identical contract, and said:

"Considering all of the terms of the order and contract together, several of which are inconsistent with a sale, it is concluded that the relation of principal and agent was created, and not that of debtor and creditor. The provision for return is deemed to confer reciprocal rights. The consignor had the right to require a return of the piano after four months, and the consignee the right to return it without demand. It, therefore, was the property of the company and the mortgagee acquired no interest in it."

In the following cases, similar instruments were construed and held to be consignments and not conditional sales, viz: Barteldes Seed Co. v. Border Queen Mill & Elevator Co., 23 Okla. 675, 101 Pac. 1130; McKinney v. Grant, 76 Kan. 779, 93 Pac. 180.

The intentions of the contract should be arrived at by a construction of all of its provisions taken together. By all reasonable intendment, this was a contract of consignment and not of conditional sale. It plainly created a bailment, and not the relations of creditor and debtor. There was nothing in the evidence to show that the parties ever abandoned this relation of bailor and bailee, or brought into being any other relation.

We conclude that the trial court did not err in its findings and judgment, and that such judgment should be affirmed.

By the Court: It is so ordered.