No. 27,837.

G. H. DANNENBERG, *Appellee,* v. C. R. TEETERS, as Sheriff, etc., *Appellant.*

(266 Pac. 744.)

Opinion filed May 5, 1928.

*George D. Freeze,* of Goodland, for the appellant.

*G. L. Calvert,* of Goodland, *W. S. Langmade* and *Wallace T. Wolfe,* both of Oberlin, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment in favor of plaintiff in an action in replevin, and the correctness of that judgment depends on whether the relationship of plaintiff and one C. A. Plumb was that of principal and agent or of vendor and vendee.

For some time prior to 1926 Plumb operated a garage and filling station in Goodland. Plaintiff Dannenberg was the agent of the Nourse Oil Company, a concern which supplied Plumb with oils and greases for his trade. Plumb did not pay his bills promptly, and the Nourse Oil Company terminated business dealings with him. Dannenberg's commission on sales for the Nourse Oil Company was 20 per cent; and rather than lose the commission he had theretofore enjoyed from Plumb's business he decided to become responsible himself to the Nourse Oil Company and to have their supplies shipped to himself and Plumb at Goodland, to be delivered to Plumb upon an understanding that they were to belong to Dannenberg, and to be sold by Plumb at whatever advance in price he choose to exact over the cost which Dannenberg had to pay to the Nourse Oil Company. Except in this special course of dealing with Plumb, Dannenberg continued to be the regular agent of the Nourse Oil Company, and on all oils and greases supplied to Plumb under this special arrangement the Nourse Oil Company allowed Dannenberg a rebate equal to his regular 20 per cent commission. Plumb retailed the goods and informally accounted to Dannenberg for some months; but eventually he disappeared, leaving certain debts unpaid. One of his creditors, T. A. McCants, brought an action before a justice of the peace and caused an attachment to issue, under which the sheriff seized barrels and drums of oil and other lubricants which Dannenberg had supplied to Plumb under the arrangement above mentioned.

Dannenberg brought replevin to recover the attached property. Issues were joined and the evidence for both parties was presented to a jury. The controlling evidence was that given by plaintiff Dannenberg himself, and at its conclusion it was agreed by counsel that what he had testified to was true.

[COUNSEL FOR DEFENDANT]: "It is all true and undisputed."

Thereupon an instructed verdict was entered in plaintiff's behalf, and defendant appeals, contending that the relation of creditor-

vendor and debtor-vendee rather than that of principal and agent existed between Dannenberg and Plumb.

The most significant parts of Dannenberg's voluminous testimony read:

"*Direct examination.*

. . . . . . . . . . . . . . . .

"A. I shipped him oil, which I paid for, and he was to sell it and on a commission basis. . . .

"Q. Was he to get a percentage commission or all that he got over a certain price? A. All he got over a certain price.

"Q. And that was the price fixed by you? A. Yes, sir. . . .

"Q. You bought it yourself? A. Yes, sir. . . .

"Q. Were you to receive the money before the oil was sold? A. No, sir. . . . A. Well, the arrangements were that when he sold it he was to send me the money, but really when I came in and checked over, then he paid me the money that was due me, when I checked it over and saw how much of it was sold. . . .

"Q. Then why didn't you sell it to him? A. Because I wanted to be sure of either having the goods or the money. . . .

"Q. Was anything said about whose property that was to be during that time? A. Well, it was to be mine, until it was settled for, always. . . .

"*Cross-examination.*

. . . . . . . . . . . . . . .

"Q. How were you selling it? A. I bought the goods, and shipped them to him and he sold them and was to get—was to give me the prices here (indicating), and everything that he got above that was his.

"Q. Was he selling them for you on a commission? A. He was selling on a commission as far as that's concerned. This is the price that I was to get. . . .

"Q. What commission? A. Whatever he desired to sell them at. . . . A. I didn't give him credit. . . .

"Q. Did you expect to get those goods back? A. I expected to either get the goods back or to get the money for them. . . .

"Q. You let him have the goods on time to sell? A. Yes. . . .

"Q. I understood you to say this was a partnership arrangement whereby you were to furnish the goods and he was to sell them and you were to divide the profit? A. I did not; I never said that. . . .

"*Redirect examination.*

. . . . . . . . . . . . . . . .

"Q. I understood you to say in answer to Mr. Freeze that Plumb was your agent to sell those goods and collect for you? A. Yes, sir. . . .

"Q. Then these goods were never Plumb's goods? A. No, sir; they were not."

Since it was conceded by defendant that the foregoing testimony

was "all true," it seems that the status of principal and agent more aptly, and indeed more justly, defines the relation of Dannenberg and Plumb than that of vendor and vendee or of creditor and debtor. (*Powell v. Wallace,* 44 Kan. 656, 25 Pac. 42; *Implement Co. v. Parlin & Orendorff Co.,* 51 Kan. 544, 33 Pac. 360; *Renoe v. Milling Co.,* 53 Kan. 255, 36 Pac. 329; *McKinney v. Grant,* 76 Kan. 779, 93 Pac. 180; *Van Arsdale v. Peacock,* 90 Kan. 347, 133 Pac. 703.)

The point is suggested that Dannenberg's interest in the attached property was not recorded in the office of the register of deeds under R. S. 58-314. That statute, however, is not concerned with the registry of *ownership* of property, but with vendors' rights under contracts of *conditional sale.* Even if the nominal title to the property had been in Plumb, the attachment would have been ineffective to strip Dannenberg of his actual ownership. (*Kindig v. Richardson,* 108 Kan. 218, 194 Pac. 920.) And see, *Turner v. Williams,* 114 Kan. 769, 772, 221 Pac. 267.

The judgment is affirmed.