No. 31,352

DARLING & COMPANY, *Appellee*, v. F. C. PETRI, *Appellant*.

(27 P. 2d 255.)

Opinion filed December 9, 1933.

*Payne H. Ratner,* of Parsons, for the appellant.
*C. E. Pile,* of Parsons, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action which originated before a justice of the peace to recover the purchase price of a quantity of fertilizer which defendant had bought from a farmers' association at the railway point of Dennis, in Labette county.

Plaintiff alleged that it was the owner of the fertilizer which was in the possession of the farmers' association under a consignment agreement between plaintiff and the association of several years'

standing; that on September 20, 1931, the association, as agent of plaintiff, had sold to defendant ten tons of fertilizer at $26.50 per ton; that defendant had failed to pay the amount due, to wit: $265; and for this sum and interest it prayed judgment.

Attached to plaintiff's bill of particulars was a copy of the consignment agreement dated and executed by plaintiff and The Farmers Union Coöperative Association, of Dennis, August 27, 1926. By its terms the association became plaintiff's agent to sell fertilizer at prices to be furnished by plaintiff, settlement was to be guaranteed in cash on July 1 and December 1 each year for all goods sold. Discounts and commissions were to be dictated by plaintiff. Another provision of the contract read:

"OWNERSHIP: All fertilizer consigned to agent; all notes, accounts, cash and other proceeds from the sale of fertilizer are the property of Darling & Company. All cash, notes and accounts received by agent through the sale of Darling's fertilizer shall be kept separate from other moneys and accounts."

Plaintiff's bill of particulars also alleged—

"4. Plaintiff alleges that when said contract was made and executed, the above-named defendant, F. C. Petri, was a director of said corporation and as said director was actively engaged in the management and oversight of the business of said corporation. . . . That subsequent to said 27th day of August, 1926, said F. C. Petri was in and about the office of said coöperative association at Dennis, Kan., two to four times per week, and as a director of said corporation attended all, or nearly all, of the meetings of the board of directors of said corporation subsequent to the execution of said contract. That as a director of said corporation, said F. C. Petri was familiar with the constitution and by-laws of said corporation. . . . That said defendant was familiar with the terms and conditions of the written contracts of said agent corporation."

The pleaded defense was a general denial.

A jury was waived. The evidence took a wide range and the record is voluminous. It was shown that defendant resided near the business office of the local association, that he had been a stockholder and director of it since its inception nine years previously; that he was actively engaged in the business of buying and selling grain and live stock and was in and out of the association's business office in Dennis two or three times a week; that he attended nearly all of the meetings of the board of directors; that in 1931 the association was in financial difficulties. One director testified that as early as March, 1931 (nine months before it was adjudged bankrupt), its condition was the subject of solicitous concern on the part of its board of directors. On cross-examination he testified:

"I thought at that time that the business appeared to be in a failing condition. That was my conclusion from the time the matter was discussed in March, 1931. I told the board that. The other members of the board did not exactly agree with my conclusion."

Some time prior to the purchase of the fertilizer by defendant (which was on September 22, 1931) the association had borrowed a sum of money from defendant upon its promissory note. Payments had been made on this note, so at the time of the fertilizer transaction the balance due thereon was $245 and $13 accrued interest, totaling $258. The association had an account for miscellaneous items of goods supplied to defendant and his tenant amounting to $41.29. Defendant returned to the association its note and his check for $41.29 in payment for the fertilizer and to settle the account. Plaintiff never received payment for the fertilizer.

The trial court made findings of fact, some of which read:

"4. That the merchandise received by said corporation (The Farmers Union Coöperative Association, of Dennis, Labette county, Kansas) from plaintiff was on consignment and remained the property of plaintiff until sold by said corporation as agent of plaintiff, all as provided by the terms and conditions of said contract.

"5. That defendant did not know the terms and conditions of said written contract of agency at any time during its existence.

. . . . . . . . . . . . . .

"8. That on the 21st day of September, 1931, said agent corporation delivered to defendant ten tons of plaintiff's fertilizer of the market value of $255, and in exchange therefor defendant returned to said agent corporation a certain note which he then owned, payable to himself on demand, with a balance due thereon in the sum of $245, on which there was then due the sum of $13 interest, which note was signed as maker by said agent corporation.

"9. That note which defendant held and owned against said agent corporation was of very little, if any, value on September 21, 1931; that said note was marked paid and canceled, and that instead of cash or a note signed by defendant on the forms provided by plaintiff being received in payment of the purchase price of said fertilizer, there was attempted to be substituted the obligation of said agent corporation, which was then in a failing condition; that such a transaction was not within the scope or apparent scope of said agent's authority.

"10. That it was the duty of the defendant, as a member of the board of directors of said agent corporation, to know the terms and conditions of said written contract of agency; that said contract was available to said defendant upon search or by inquiry from a manager, C. N. Stafford; that said defendant was negligent in the performance of his duties as a director of said agent corporation in that he failed and neglected to inform himself of the terms and conditions of the written contract of agency or the financial condition of said agent corporation.

"Conclusions of Law

"Therefore, the court concludes as a matter of law that judgment should be rendered in favor of plaintiff and against the defendant in the sum of $255, with interest thereon at the rate of six per cent per annum from September 21, 1931, and for costs of suit."

Judgment was entered accordingly, and defendant appeals.

At the onset plaintiff challenges defendant's right to be heard by reason of a certain recital in the journal entry of judgment to the effect that when the motion for a new trial came on for hearing counsel for defendant "advised the court that he did not care to submit any argument or authorities other than the arguments heretofore made and the briefs heretofore offered on the conclusion of the trial of said cause in support of said motion."

Elsewhere it recited:

"And said motion . . . [was] submitted by agreement of counsel without argument and without appearance of counsel either for or against said motion."

While the ordinary rule is that a motion for a new trial submitted to the trial court without argument presents nothing for appellate review (*State v. Toelkes,* 128 Kan. 293, 278 Pac. 20, syl.), yet where the legal questions involved in the motion have been briefed and argued at some earlier stage of the trial, the litigant does not lose his right of review when his counsel advises the trial court that he can add nothing to what he has already said in support of his view of the rulings which should have been made in the course of the trial. (*Beam v. Farmers Union Mutual Hail Ins. Co.,* 127 Kan. 234, 238, 273 Pac. 440.)

Turning now to the errors assigned by defendant, it is first contended that the contract between plaintiff and the Farmers Union Coöperative Association of Dennis was between vendor and vendee, and not one of consignment. We cannot assent to that. Contracts of consignments have long been familiar in business circles in this state and have frequently required consideration by this court. (*Renoe v. Milling Co.,* 53 Kan. 255, 36 Pac. 329; *McKinney v. Grant,* 76 Kan. 779, 93 Pac. 180; *Van Arsdale v. Peacock,* 90 Kan. 347, 133 Pac. 703; *Dannenberg v. Teeters,* 126 Kan. 28, 266 Pac. 744; *Baldwin Piano Co. v. Lyon County State Bank,* 126 Kan. 519, 268 Pac. 859.) And see Annotation—Consignment Contracts, L. R. A. 1917B 626-651; 17 A. L. R. 1437-1441; 43 A. L. R. 1259; 63 A. L. R. 364, 365; 6 C. J. 1091.

From the contract itself, as well as the evidence touching the dealings of the parties under its terms, the relationship of plaintiff and the farmers association at Dennis was that of principal and agent. Departures from the literal terms of the contract were slight and inconsequential. While the association did not always remit cash for sales precisely as specified, that fact did not change the contract from one of consignment to one of sale, nor relieve the association of its character and duty as agent of the plaintiff. When the association sold fertilizer on time, receiving purchasers' notes therefor, those notes were made payable to plaintiff and were delivered to it, and the association also signed the notes as security, not merely as indorser or assignor.

In Williston on Sales, 2d ed., 786-788, it is said:

"Where goods are consigned for sale, it is always the hope, and generally the expectation, that the goods consigned will be sold by the consignee and money instead of the goods be returned to the owner. Nevertheless, it is clear that the consignee is properly to be described as a bailee if his holding is for the consignor and the sale is made by him as agent for the consignor.

"As against the creditors of the consignee the consignor's right should also be protected, for the transaction is certainly no more misleading than a conditional sale, and the right of the consignee in the goods is far less than that of the buyer in a conditional sale. The question has not infrequently arisen in regard to the rights of the consignee's trustee in bankruptcy to the goods thus consigned, and the consignor has been generally and rightly protected. Nor does the consignor lose his rights because it was a term of the contract that the consignee should guarantee the payment of the price of any goods sold by him. This is the case of a *del credere* agent."

The evidence and the trial court's finding were that defendant did not in fact know the terms and conditions of the consignment contract under which plaintiff supplied the fertilizer to the association from August, 1926, until September, 1931. Should that fact be permitted to relieve defendant of liability?

Can a director of a corporation be heard to say that he does not know the nature of the business his corporation is conducting? The duty of a director as a member of its board of directors is to direct, guide and manage its corporate affairs. He is in effect a trustee. To discharge these responsibilities it is his duty to keep himself informed of its business activities, and especially in respect to its business policies. In *Gay v. Mercantile Institution et al.*, 37 Utah 280, 288, the plaintiff conveyed a tract of land to defendant to provide for the payment of her husband's debt. The land was to be

sold for the best price obtainable and any balance returned to her. Defendant sold and conveyed the property at a sacrificial price to one Rockhill, a member of its board of directors. He did not know personally of the arrangement whereby the corporation had acquired the property from plaintiff. Plaintiff recovered a judgment for the difference between her husband's debt to the corporation and the fair value of the property. Touching Rockhill's position, the court said:

"But is appellant Rockhill also liable to the respondent? . . . Whenever a corporation of this state exercises its powers, it must do so through the board of directors, since, under our statute (Comp. Laws, 1907, section 324), all corporate powers are vested in and 'shall be exercised by the board of directors.' No doubt the majority of the board, when regularly convened, may exercise any of the corporate powers in the absence of the minority. . . . The minority is not only bound by the acts of the majority, but the minority members are charged with knowledge of all the legal corporate acts that are exercised as aforesaid. . . . In 21 A. & E. Ency. L., 2d ed., 896, the law upon that subject is stated in the following language:

" 'As a general rule an officer or director of a corporation is chargeable with knowledge of all matters relating to the affairs of the corporation which he actually knows or which it is his duty to know. Thus, in actions by strangers against an officer or director, the defendant will generally be charged with knowledge of all facts relating to the condition and business of the company which he might have known by the exercise of due diligence, whether actually known to him or not.' " (pp. 287, 288.)

In one of our own cases, *Harvester Co. v. Hardware Co.*, 101 Kan. 488, 167 Pac. 1057, where the general subject of a director's duty to know about his corporation's concerns was under consideration, it was said:

"One form in which the rule has been stated is that the director is chargeable with all matters which it is his duty to know." (p. 490.) See, also, 14a, C. J. 100.

Under the statute authorizing the creation of coöperative corporations like the one of which defendant was a director, it is provided that it must be managed by a board of directors (R. S. 17-1510), and that the duties of directors should be prescribed by by-laws. The pertinent by-law prescribed by defendant's association defined the duties of the directors as follows:

"To make rules for the management of the association, and for the several departments and branches thereof that may from time to time be established. To enter into any or all lawful contracts or obligations essential to the transactions of the affairs of the association, and to issue all such notes, bills or

other evidence of indebtedness as the rules and regulations of the association may provide for, and to convert into cash any such notes, bills or other evidence of debt as are in the custody of the said directors and are the property of the association."

Defendant testified that he read the by-law years ago.

"Q. You read that language in this book did you not? A. Yes, I suppose I did."

At the monthly, quarterly and annual meetings of the board of directors, at which defendant was a regular attendant, there must have been a general survey of the corporation's business—which of its corporate activities were profitable and which were not. In any such survey the fact was bound to come out that the corporation was handling Darling & Company's fertilizer in carload lots under a consignment contract, and some report must have been made touching the commissions it earned on that business. It is unnecessary here to say that a director is bound to know the details of his corporation's activities; he would be unlikely to know with precision whom it owed and who owed it. But it would never do for this court to say that Director Petri was not chargeable with notice of the existence of some such contract as the one under consideration here, under which business had been transacted between plaintiff and the coöperative association of Dennis for five years, and which could only have been undertaken and carried on by the active or passive assent of the association's board of directors.

It seems perfectly clear that the trial court's judgment on this question was correct.

Defendant presses on our attention the ordinary rule of law that directors are not personally liable for the wrongful acts or delicts of the corporation unless they intentionally participate therein. That rule has no bearing on this case. Nor is the present question quite fairly stated as "a lawsuit for the purpose of determining whether defendant must pay twice for ten tons of fertilizer." But, however many times he pays, he must pay once to the party justly entitled to receive such payment, and that party is the plaintiff.

The other objections to the judgment have been carefully considered, but they warrant no further discussion.

The judgment is affirmed.

HUTCHISON, J., not sitting.