No. 33,006

S. A. CURRY, *Appellee,* v. C. N. BUNDS, *Defendant;* THE FARMINGTON COÖPERATIVE ASSOCIATION, Intervenor, *Appellant.*

(66 P. 2d 584)

Opinion filed April 10, 1937.

*Donald C. Allen,* of Oskaloosa, for the appellant.
*Richard A. Swallow,* of Valley Falls, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was originally an action for money judgment against the defendant, C. N. Bunds, on an insufficient-fund check. It expanded into a contest between the plaintiff, Curry, and intervenor, the Farmington Coöperative Association, on the question of ownership of certain corn. The issue was decided against intervenor, and it appeals.

To review the error complained of we are required to examine essential portions of the evidence. The pertinent facts are as follows: Appellee Curry obtained a money judgment against defendant C. N. Bunds in the sum of $588.22. Execution was issued

and the writ returned, "No goods found." Subsequently garnishment summons was served on C. W. Gaut, who filed his answer admitting liability to plaintiff in the sum of $482.60 for corn which he alleged he had bought from the defendant Bunds. The answer further alleged in substance: The Farmington Coöperative Association, subsequent to the sale, made and now makes claim to the indebtedness and the ownership of the corn sold by defendant Bunds; he bought the corn from Bunds, who stated it was his corn, and he intended to pay Bunds therefor; C. N. Bunds, Jr., manager of the Farmington Coöperative Association (intervenor), was present when the sale was made and heard the conversation in which defendant Bunds claimed ownership of the corn, but made no claim of ownership in the corn, either for himself or anyone else; after the service of garnishee summons, and not before, C. N. Bunds, Jr., claimed the corn belonged to the Farmington Coöperative Association; he (Gaut), believed the corn belonged to C. N. Bunds; after the service in garnishment, C. N. Bunds stated to him—

"This corn wasn't mine. It belonged to the Farmers National Grain Corporation. I forgot to tell you about this while we were making the deal. I guess I led you to believe the corn was mine."

The Farmington Coöperative Association, upon leave of court, intervened and filed its motion to dissolve the garnishment. The motion in substance alleged: The property and money garnished and attached as the property of C. N. Bunds was, at the time of garnishment, and now is, the sole property of intervenor; the corn was delivered to the premises of Gaut from the elevator of intervenor; Bunds at no time had, nor now has, any interest, lien or claim to the corn sold or to the money owed therefor by Gaut.

To this motion appellee filed an answer which denied the foregoing allegations of intervenor's motion and then stated in substance: The corn was the sole property of defendant C. N. Bunds, and was sold as such by him to Gaut, and Gaut contracted to pay Bunds personally therefor; Gaut had no notice anyone else claimed ownership in the corn; C. N. Bunds, Jr., manager of intervenor, conspired with his father to defraud plaintiff out of the fund in question; C. N. Bunds held himself out as owner of the corn; Bunds, Jr., manager of intervenor, heard the conversation at the time of sale and at the delivery of the corn and interposed no objection nor made any claim of ownership in intervenor, but by his silence acquiesced in the claim of ownership by C. N. Bunds, and inter-

venor is now estopped from claiming ownership of the corn or the money garnished.

Upon the issues thus joined the action was tried. Appellee now concedes the question of estoppel is not an issue before this court. The sole question is therefore whether defendant, C. N. Bunds, or intervenor was the owner of the corn. The pertinent evidence introduced on behalf of intervenor disclosed in substance the following facts:

Intervenor had an elevator at Farmington; it had employed defendant Bunds to sell grain for it on a commission basis and to do some trucking of grain; for the trucking Bunds received three cents per bushel; intervenor handled grain for the Farmers National Grain Corporation, of Omaha, Neb., on a consignment basis; it had received a carload of grain from the latter; the uniform bill of lading was introduced, showing consignment of a carload of corn from the Farmers National Grain Corporation to itself at Lancaster; grain was trucked from Lancaster to Farmington; an invoice showed the sale of this identical car of corn from the Farmers National Grain Corporation to intervenor; four sale tickets were introduced showing the sale and delivery of four loads of corn by the Farmington Coöperative Association, intervenor, to Gaut. As to the ownership of the corn, defendant Bunds, called as a witness by intervenor, testified in substance that he owned no stock and had no interest in the Farmers Coöperative Association or in the proceeds of the corn sold to Gaut; he sold corn for intervenor on a commission basis; the corn sold to Gaut was hauled from the Farmers elevator; he had no corn of his own at that time and for six months had sold none which he owned; he told Gaut he could sell him some corn.

As to the ownership of the particular corn sold to Gaut, C. N. Bunds, Jr., a witness called by intervenor, testified in substance that he was the manager of intervenor, but had no interest in it; the corn sold to Gaut was owned by intervenor; it was shipped from Omaha to Lancaster, and from there trucked to the Farmington elevator; the corn sold to Gaut was taken from the car covered by the bill of lading from the Farmers National Grain Corporation; he sent Gaut an itemized statement for each of the four sale tickets; the tickets show the money for the corn was owing to the Farmers Coöperative Association; he delivered that statement to Gaut personally; not a bushel of the corn shipped in the car ever belonged to C. N. Bunds.

J. H. Dean, a witness called by intervenor, testified:

"I am a representative of the Farmers National Grain Corporation for Northeast Kansas, and as such have done business with the Farmington Coöperative Association, of Farmington. We have a contract with the Farmington Coöperative Association in which we furnish all the money to ·purchase grain that they buy, and they are authorized to convey title to the grain."

C. L. Burke, secretary and treasurer of intervenor, testified concerning the employment of defendant Bunds, as follows:

"A. He came to me and asked about opening up the elevator and told me about his boy wanting a job; it was only a small place and he said he thought he could influence some friends to consign grain to the Farmington elevator and he figured on doing trucking and collecting for that; I told him if he did so we would pay him a little commission.

"Q. Was he to receive any actual profits? A. It would be in the form of a commission. We bought this grain on a commission basis from the Farmers National on a commission basis and sell at the market price at Farmington; any profit we made was ours."

Touching on the question of ownership of the particular corn sold to Gaut, the garnishee, Gaut was called as a witness by appellee, and testified:

"Q. Did you have a conversation with him? A. Yes.

"Q. State it. A. I asked if he had corn and he said he did at the elevator at Farmington; showed me a sample.

"Q. Who did he say had this corn? A. If I remember he said, 'I have.'

"Q. Did he make a price? A. Yes, I thought it too high, we made a deal.

"Q. Did he state any other person was the owner? A. No.

"Q. Did you see him again? A. Yes.

"Q. Where? A. At the house.

"Q. Was anyone present? A. Junior.

"Q. Did he hear the conversation? A. Suppose he could have.

"Q. What was the conversation between you and C. N. Bunds? A. I tried to get him to take off some on the price of the corn, thought it a little high, finally decided to buy, he wanted to gamble on the market and deliver Wednesday; said· we would take a chance whether it would be more or less.

"Q. At that time did he mention any other person as the owner of the corn outside of himself? A. Not that I remember.

"Q. Did Junior hear his father say, 'I will sell on tomorrow's market'? A. Suppose so.

"Q. Did he say anything? A. No.

"Q. Who did you buy this corn from? A. Mr. Bunds.

"Q. Did you have any intention of buying from any other person? A. No.

"Q. Did you hear the Farmington elevator mentioned until after this garnishment was filed? A. No.

"Q. He did not mention the elevator as being owner of the corn? A. No.
"Q. What did he say? A. Said, 'I have some corn.'"

James Smith, called as a witness for appellee, stated he was present when the first load of corn was delivered to Gaut, and that he had a brief conversation with defendant C. N. Bunds, which was as follows:

"Q. State the conversation as near as you can remember it. A. I looked at the corn and said, 'This is pretty good corn; where did you get it?' He said, 'I have it at Farmington.' We talked a while and I said, 'What do you have to have for this kind of corn?' He said, 'We have set no certain price. It is a gamble, whatever the market. A fellow might lose or he might make a little. You don't make anything unless you take a chance.'
"Q. Did he state he was not the owner of the corn? A. No.
"Q. He stated, 'I am going to take a gamble on the corn'? A. Yes.
"Q. That is all the conversation you had? A. Yes, I was cutting weeds and did not go to the barn any more while he was there."

There was testimony on behalf of appellee showing defendant Bunds had accepted from other purchasers of corn two checks made payable to him personally. As to at least one of these checks the defendant testified, in substance, he thought the reason he deposited the check in his own account was because intervenor was then indebted to him. He also stated, in effect, that these checks were taken into account when settlement was made on what intervenor owed him. Other testimony might be narrated, but it is not vital on the question of ownership of the particular corn sold to Gaut.

Appellee's contention that the corn sold to Gaut was owned by defendant Bunds is based mainly on statements made by Bunds to Gaut to the effect he (Bunds) had some corn to sell. It is common knowledge that this or similar language is frequently employed by either an owner or an agent engaged in any sales business. It is just the sort of language that would be expected from an agent selling grain on a commission basis. In fact, it is commonly employed by agents and clerks in various lines of business, with no thought of conveying the notion of personal ownership. In any event, intervenor clearly proved its ownership of the particular corn sold to Gaut. It delivered this identical corn which was shipped from Omaha, Neb., onto the premises of Gaut. That fact is uncontradicted. The bill of lading, the invoice and the four sale tickets to Gaut are all written instruments. They speak for themselves. The four sale tickets disclose a sale not from Bunds to Gaut, but from intervenor to Gaut. The testimony of Bunds, Jr., manager of in-

tervenor, was that he delivered itemized statements for each of these four loads of corn to Gaut. Appellee failed completely to prove defendant Bunds' title to this corn. What Bunds said to Gaut did not divest intervenor of its title to the corn. Plaintiff could not reach what defendant did not own. In *Hall v. Terra Cotta Co.*, 97 Kan. 103, 105, 154 Pac. 210, it was said:

"The general rule is that garnishment, like other proceedings in *invitum*, only affects the actual property, money, credits and effects of the debtor in the hands of the garnishee, and the rule relating to bona fide holders or purchasers without notice has no application. (Citations.)" (p. 105.)

See, also, *Bank v. Schuetz*, 103 Kan. 229, 173 Pac. 278; *Fairbanks, Morse & Co. v. Inglitt*, 106 Kan. 488, 491, 188 Pac. 248; *Bank v. McNabney*, 109 Kan. 69, 109 Pac. 879; *Dannenberg v. Teeters*, 126 Kan. 28, 31, 266 Pac. 744, and citations.

Appellee also contends if intervenor's testimony that it had this grain on consignment from the Farmers National Grain Corporation is true, then intervenor had no title to the corn and could not prevail in this action. The contention is unsound. Intervenor, according to the uncontradicted testimony of the witness Dean, had authority to convey title to the grain.

Appellee lays much stress on the statement of the witness Burke, secretary and treasurer of intervenor, made in connection with the employment of Bunds, to wit: "Q. Was he (Bunds) to receive any actual profits? A. It would be in the form of a commission. We bought this grain on a commission basis from the Farmers National, on a commission basis, and sell at the market price at Farmington. Any profit we made was ours."

Appellee contends the above answer meant that Bunds and Burke were to make the profit and that intervenor had nothing to do with the transaction. The contention is wholly untenable. The question was whether he (Bunds) was to receive any actual profit. The answer to that particular question was, "It would be in the form of a commission." The remainder of the answer clearly dealt with the relation existing between intervenor and the Farmers National Grain Corporation. There is no evidence in this record which could be reasonably interpreted to mean that Burke and Bunds bought the grain from the Farmers National Grain Corporation, of Omaha, Neb., on a commission or any other basis. The evidence is to the contrary. Furthermore, if appellee's contention that Bunds and Burke were engaged in such a partnership had been supported

'by evidence, then the net profits from that deal would belong to the partnership of Bunds and Burke and not to Bunds. Under that status, if it had in fact existed, appellee could not have garnished the funds in the hands of Gaut belonging to a partnership. Appellee had no judgment against the partnership, and indeed the proceedings in garnishment were not predicated upon any such theory.

Other contentions which appear to be seriously urged by appellee have been noted, but it is deemed unnecessary to discuss them, as they cannot alter the conclusion we have reached. There was no substantial evidence showing the defendant Bunds owned the corn. The evidence clearly established such ownership in intervenor, and hence it is entitled to the funds garnished. The judgment is therefore reversed, with directions to enter judgment for intervenor.