No. 24,397.

C. C. Turner, an Insane Person, by Perry Turner, his Guardian, *Appellee and Appellant,* v. I. F. Williams, and George Wester-man, *Appellees* (The Rexford State Bank, *Appellant*).

### SYLLABUS BY THE COURT.

1. Garnishment—*Moneys in Debtor's Checking Bank Account—Garnishee Summons Reaches Only What Actually Belongs to Debtor.* Where a tenant of a farm sold the landlord's share of the crop and deposited the proceeds in his own checking account in a bank, the landlord's claim to the money thus deposited is superior to that of a creditor who garnisheed the money in the debtor's checking account, under the general rule that garnishment only reaches what actually belongs to the debtor.

2. Same—*Checking Account Impressed with a Trust.* Under the circumstances stated in syllabus No. 1, the tenant's deposit and checking account is impressed with a trust in the landlord's favor, where no rights of innocent third parties will be prejudiced thereby.

3. Same—*Debtor's Checking Bank Account Not Assigned.* The evidence offered in support of a claim that the debtor's account had been assigned to the garnisheed bank examined and held insufficient to establish such assignment.

4. Same—*Money in Debtor's Checking Account—Subject to Check by Consent of Mortgagee Bank.* Where a bank knowingly permitted its debtor (who was also its depositing customer) to keep in the debtor's ordinary deposit and checking account the proceeds of a sale of wheat on which the bank had a mortgage, and permitted him to check on such account in the usual course of the debtor's business, the bank thereby elected to treat the fund as the debtor's property, and such fund was amenable to garnishment at the instance of another creditor.

5. Same—*Defect in Garnishment Affidavit.* A defect in a garnishment affidavit is waived by a garnishee who answers the garnishment summons on the merits.

6. Same—*Garnishment Undertaking Valid.* Defects urged against the garnishment undertaking considered and held not of sufficient gravity to vitiate it.

7. Same—*Answer of Bank to Garnishee Summons Interpreted.* The answer of the bank as garnishee to the garnishment summons examined, and *held* that, taken as true, it did not disclose a better right to the debtor's checking account than the garnisheeing creditor, for reasons discussed in the opinion.

8. Same—*Proceedings in Garnishment Regular.* Plaintiff's proceeding in garnishment was neither irregular nor improper although the basis of his action, to which the garnishment was ancillary, was two promissory notes, one of which was not due when the garnishment proceedings were first begun.

9. Same—*Bank Holding Debtor's Checking Account as Trust Fund.* The evi-

dence did not necessarily require a finding of fact that the bank held the debtor's checking account as a trust fund in the bank's own favor.

10. SAME—*Rights of Garnisher, Garnishee and Interpleader.* Record and judgment touching the rival rights of a garnisher, a garnishee, and an interpleader, to an unresisting insolvent debtor's checking account in a bank, examined, and no error discerned therein.

Appeal from Thomas district court; CHARLES I. SPARKS, judge. Opinion filed December 8, 1923. Affirmed.

*Asa M. Smith,* and *V. L. C. Smith,* both of Colby, for the appellant, C. C. *Turner; E. H. Benson,* of Colby, for the appellant, The Rexford State Bank.

*E. S. Rice,* and *W. S. Rice,* both of Smith Center, for the appellee, George Westerman.

The opinion of the court was delivered by

DAWSON, J.: This appeal relates to the rights of precedence of rival litigants, garnisher, garnishee, and interpleader, all of whom were creditors of the defendant debtor, I. F. Williams.

In 1920, Williams was a tenant farmer, thresherman and grain buyer at Menlo in Thomas county. The precipitate decline in the price of wheat in the autumn of that year caused his insolvency.

Westerman, interpleader, was the owner of a quarter section of wheat land which was farmed by Williams on equal shares of the crop. Williams raised about 2,700 or 2,800 bushels of wheat on the Westerman land; he sold it and placed the proceeds in his own general deposit and checking account in The Rexford State Bank. Westerman did not learn of this sale and conversion until some weeks thereafter.

The Rexford State Bank was a creditor of Williams to the extent of $3,700, for the security of which it held a mortgage on certain chattels of Williams and on a small pile of wheat belonging to him located on a certain town lot in Menlo. In this bank Williams was a depositing customer, and the proceeds of all of Williams' sales of grain were deposited therein and checked out again as needed in the course of his business transactions. During October and November, 1920, Williams' deposit and checking account fluctuated between $6,981.34 maximum and $1,950 minimum. The bank figures as garnishee as well as creditor in this action.

Turner, the plaintiff, held two unsecured notes of Williams, one for $800, due November 14, 1920, and one for $3,000, due January 1, 1921.

On November 29, 1920, Turner commenced this action against Williams on these notes, and garnisheed Williams' checking account in The Rexford State Bank, which at that time was $2,355.34.

On December 3, 1920, the bank filed its verified answer alleging that it was not indebted to Williams in any manner "excepting he has in his checking account $2,355.34, which, however, represents money from the sale of wheat· on which this bank had a chattel mortgage, and this money we claim should be applied on his note to us."

On February 17, 1921, Westerman filed his interplea alleging his ownership of a quarter section of land leased to Williams and that he had furnished the seed wheat for its sowing, in consideration whereof he was to receive one-half the crop delivered at market free of cost except his proportionate charge of the cost of' threshing. He alleged that $1,706.98 of the money in Williams' checking account was proceeds of his share of the wheat raised on and sold from the Westerman land.·

Thereafter, on June 20, 1921, plaintiff filed an amended and supplemental petition setting forth anew his two causes of action on the two notes—the chief supplementary matter being that both notes were then past due and unpaid, whereas only the $800 note was due at the time the original petition was filed and the original garnishment undertaken.

The bank made verified answer to the second summons in garnishment setting up a note of Williams for $3,700 due December 15, 1920, and a mortgage to secure it covering 2,000 bushels of wheat on Block 11 in Menlo, and alleging that after its execution Williams sold the greater part of the wheat and turned over to the bank the proceeds to be applied on his debt to the bank, and—

"That at the time of the service of the first garnishee summons in this action, to wit: November 29th, 1920, and at the time of the service of the second garnishee summons in this action, to wit: July 1st, 1921, this answering garnishee had on hand of the funds arising exclusively from the sale of the wheat upon which it held a chattel mortgage as above stated the sum of $2,355.34 and no more. That said money above enumerated at the time of the service of garnishee summons, and· each of them, upon this garnishee was a trust fund and was being held by this garnishee until such time as the defendant herein might sell and dispose of the remainder of the wheat covered by the aforesaid mortgage at which time he was to come to the bank of this garnishee and receive due credit upon his promissory note above mentioned which was at that time and now is the exclusive property of this answering garnishee."

· Some minor matters in these and other pleadings will not need to be stated.

Plaintiff Turner was given judgment for $4,168.66 against Williams on the two notes of $800 and $3,000 and the interest thereon. And thereupon the issues framed by the garnishment proceedings and by Westerman's interpleader were tried. Evidence was introduced, and the trial court made extended findings of fact and conclusions of law. The latter, in part, read:

### "CONCLUSIONS OF LAW.

"1. That the intervenor, George Westerman, is entitled to the sum of $1,523.20, together with six per cent interest thereon from the first day of November, A. D. 1920, from the funds in the bank of garnishee on the 29th day of November, A. D. 1920, contained in the general checking account of I. F. Williams.

"2. That the remaining portion of the amount in the general checking account of I. F. Williams, in garnishee bank on the 29th day of November, A. D. 1920, should be paid to the clerk of this court, for application on judgment of Turner v. Williams.

"3. That the garnishee has no valid claim to funds contained in general checking account of Williams, as against the claims of Westerman and Turner."

Plaintiff appeals, complaining because he was not given the entire bank deposit of Williams to apply on his judgment.

The bank urges certain defects in the garnishment proceedings, that it had no notice that any portion of the money deposited was proceeds of the Westerman rent wheat and that it traced the sale of the wheat covered by its chattel mortgage into the bank deposit, that Williams before suit had assigned the deposit to the satisfaction of his indebtedness to the bank, and that it held the deposit as a trust fund to be applied on the note of Williams when Williams should finish selling all of the wheat covered by the bank's mortgage. These contentions are made the basis of various errors assigned which, so far as necessary, will be noticed.

Considering first the points raised by plaintiff: It is fundamental that under garnishment proceedings, the garnisheeing creditor can get nothing except what actually belongs to the debtor. (*Hall v. Terra Cotta Co.,* 97 Kan. 103, 154 Pac. 210; L. R. A. 1916 D, 361, 365; *Rich v. Roberts,* 103 Kan. 116, 172 Pac. 996; *Eggers v. Ross,* 103 Kan. 812, 176 Pac. 665; *Lampl Produce Co. v. Hawkins,* 106 Kan. 423, 188 Pac. 233; *Fairbanks, Morse & Co. v. Inglitt,* 106 Kan. 488, 188 Pac. 248; *Bank v. McNabney,* 109 Kan. 69, 197 Pac. 879.) As in all other proceedings *in invitum* the rights and equities of third

parties must be respected. (*Kindig v. Richardson,* 108 Kan. 218, 194 Pac. 920.) So if Westerman or the bank had a prior equitable right to the deposit, plaintiff's garnishment would be ineffective to bar or supplant such equity. And so far as Westerman was concerned, it was found by the trial court, on supporting evidence, that the proceeds of Westerman's share of the wheat was deposited in the bank and was a part of Williams' checking account therein prior to the institution of plaintiff's action, November 29, 1920. The proceeds of Westerman's wheat, therefore, belonged to Westerman none the less because it was on deposit in Williams' name; its identity had not been lost nor its character changed merely because it was mingled with other money of Williams or standing in his name. (*Morrill & Janes v. Raymond,* 28 Kan. 415; 39 Cyc. 538; 26 R. C. L. 1348 *et seq.*) Even if there had been complete substitution of other moneys of Williams for the Westerman wheat money, the deposit account would remain a trust fund for Westerman's benefit. (*Myers v. Board of Education,* 51 Kan. 87, 32 Pac. 658; L. R. A. 1916 C, 21 *et seq.;* 3 R. C. L. 552, 553.) Consequently as between Westerman and plaintiff, the trial court's judgment was correct.

The plaintiff urges other errors, but as he was given judgment for all the money remaining in the Williams deposit account, after the Westerman superior claim was satisfied, it seems needless to consider them.

Turning now to the grievances of the bank, some of which are directed at plaintiff, some at Westerman, and some at both plaintiff and Westerman; counsel for the bank contend that the whole checking account had been assigned by Williams to the bank a few days before the garnishment summons was served. The evidence on this point was that one evening just as the bank was closing and the cashier leaving for home, Williams said to the cashier, "Probably we had better put this money in the bank on the note." The cashier said: "I am about ready to leave now, let's leave that until you come in again." In this conversation, also, Williams testified: "I told Crumley [cashier] to apply my money on the notes," and Crumley said he was just ready to go to Colby, and said, "We will see about it the first of the week."

Does this conversation show that an assignment was made? It is true that an oral assignment of a right is frequently sufficient in law, (*McCubbin v. City of Atchison,* 12 Kan. 166; 5 C. J. 900, 901), but it must be unequivocal, not a mere proposal to assign on which no action is taken. In 5 C. J. 897, it is said:

"In the absence of restrictions imposed by statute or by the instrument creating the interest or right, no particular mode or form is necessary to effect a valid assignment, and any acts or words are sufficient which show an intention of transferring or appropriating the owner's interest. A mere agreement to assign, or tentative proceedings in expectation of an assignment, or a promise to pay a certain portion of a claim when collected, do not constitute an assignment; there must be a present transfer of the assignor's right, a transfer so far complete as to deprive the assignor of his control over the subject of assignment."

Here there was no more than a proposal by the debtor. It was not acted upon. On the contrary there was a deliberate postponement of action until the debtor should come in again or until the following week. Furthermore, there never was any application of the funds on deposit to the payment of the note held by the bank, pursuant to such proposal or otherwise. The theory of an assignment cannot be upheld.

It is also urged that the proceeds of the pile of wheat on the Menlo town lot on which the bank held a chattel mortgage were part of the deposit account of Williams, and that the bank had the same sort of claim thereto as that of Westerman. The trial court found that the amount of wheat on the Menlo town lot was small at the time the chattel mortgage was given, October 6, 1920, and that the bank knew Williams planned to sell it and buy other wheat. The bank knew Williams bought and sold much wheat during October, 1920, and knew that he sold the small pile of wheat on which the bank had a mortgage. The bank knew it was sold almost as soon as the mortgage was given. Yet it permitted him to use the proceeds of the mortgaged wheat as his own funds. It therefore could not successfully assert a right to the deposit account superior to that of the interpleader.

The bank also urges a defect or insufficiency in the first garnishment affidavit, but this defect, as in most other defective pleadings, was waived by the garnishee's answer thereto. (*Threshing Machine Co. v. Francisco,* 106 Kan. 704, 708, 709, 189 Pac. 981.) In 12 R. C. L. 822 it is said:

"Defects in the affidavit do not render the judgment void, and a variance between the affidavit and the evidence as to a minor matter which could not have misled the garnishee may be disregarded. A garnishee, who appears and answers, and proceeds to a hearing, upon a citation issued on an affidavit for an order for the examination of himself, as garnishee, thereby waives any objection to the insufficiency of the affidavit."

It is also urged that the undertaking in garnishment was defective

Turner v. Williams.

because it was signed for plaintiff by his attorney, and because the names of the sureties are not inserted in the body of the instrument. The signatures of the sureties at the foot of the undertaking bound them absolutely, and an examination of the record fails to show that any motion or objection was leveled at the undertaking because the principal's name was signed by his attorney, even if it could be said that the undertaking was insufficient on that account.

The scope and sufficiency of the bank's answer to the summons in garnishment need attention. No notice of issue to be taken thereon was served on the bank within 20 days as provided by statute (Gen. Stat. 1915, § 7128), so the facts alleged in the bank's answer stand as true. What were the facts thus conceded? They were these: Williams had a checking account of $2,355.34 in the bank; that sum represented money from the sale of wheat on which the bank had a chattel mortgage; and the bank claimed it should be applied on Williams' note held by the bank—obviously the note for which the chattel mortgage had. been given as security.

As between plaintiff and the bank, therefore, although not between the bank and the interpleader, the fact that the $2,355.34 was the proceeds of wheat mortgaged to the bank stood as admitted. Between plaintiff and the bank, also, it stood as admitted that the bank *claimed* that the money *should be applied* on the note. On this latter point, there was really no issue of fact; it was the assertion of a claim which might or might not be legally sufficient. The plaintiff by failing to take issue could not deny that the bank claimed the money but he could contest the validity of the claim. But recurring to the conceded fact that the deposit was proceeds of wheat mortgaged to the bank, it is to be observed that the bank had not appropriated the money as proceeds of mortgaged wheat to satisfy its claim for conversion against the debtor. It held the money merely as a banker and, as a banker, it was content to place and keep the money in the debtor's checking account; and as an ordinary checking account, it was subject to the debtor's control as his own money, and consequently subject to garnishment by any creditor of Williams.

In 28 C. J. 85, it is said:

"Unless specifically exempted therefrom, garnishee process may be laid in the hands of a bank or trust company, the same as any other corporation. In this connection the remedy has been most commonly employed to reach funds of the principal defendant on deposit with the garnishee."

In 28 C. J. 279, it is said:

"A garnishee bank may set off a debt due to it as against money of defendant on deposit with it. It cannot, as a general rule, retain such money as against a note not yet due, but in some jurisdictions it may do so where the note becomes due at or before the time of the trial."

Another objection to the validity of the garnishment was that one of plaintiff's notes was not due at the time the proceedings were begun. True, but the $800 note was past due and that amount with the interest thereon would entirely consume the balance of the deposit after Westerman's claim was satisfied. The garnishment to safeguard the payment of the $800 was proper, and the fact that plaintiff also sought to subject the deposit to the payment of the $3,000 not then due did not render the garnishment abortive as to the $800. Indeed, the garnishment was good to protect the plaintiff on the unmatured note. (*Bank v. Dondelinger,* 103 Kan. 444, 175 Pac. 109; *Winterscheidt v. Wilson,* 110 Kan. 649, 205 Pac. 600.) Moreover, the plaintiff testified that a day or two before the garnishment proceedings begun, the cashier told plaintiff that Williams had a checking account of nearly $4,000 and that he (the cashier) was perfectly willing that Williams should pay the $800 note out of that checking account; and even after the garnishment the cashier said he was still willing that this note should be paid out of the checking account. The cashier testified:

"The account shown by Exhibits 3 and 4, which was the account of Williams in the Rexford State Bank, was the only account he had in said bank, was a general checking account the same as the ordinary depositors had in said bank, was subject to his checks, and one for which he received a pass book for his credits. . . The wheat he had a mortgage on was sold sometime from the 6th of October, 1920, to the 5th of November, 1920, and from the 5th day of November, 1920, he knew that the wheat on which the bank held the mortgage had been, by Williams, sold but could not say what particular deposit would represent this particular wheat, but all deposits of money that Williams made went into our bank into his account there."

The foregoing discloses quite clearly that so far as the bank was concerned the deposit account of Williams was amenable to garnishment on November 29, 1920.

In its answer on July 19, 1921, to the second summons in garnishment the bank made a further allegation that it held the deposit as a trust fund until such time as the defendant might sell some more wheat covered by its mortgage, "at which time the defendant was to came back to the bank and receive due credit upon his promissory note" owned by the bank.

There was not much evidence to support this allegation; indeed it was more of a legal theory of the bank's right to the money than an allegation of material fact. At all events, the trial court made no finding of fact in harmony with that allegation, and the general trend of the findings which the court did make was against it, and the bank bases no error on the findings of fact. The court specifically found that the money was in the general checking account of Williams, to which the bank had no claim as against interpleader and plaintiff.

The bank seeks to make a point against Westerman, because he admitted on cross-examination that, although unauthorized, it was all right for Williams to sell his wheat and get the money for it. But what of that? Williams converted the money to his own use by placing it to his own credit in the bank. Certainly Westerman did not loan Williams the money; he did not know of either the sale or conversion. He did not condone the conversion. Counsel for the bank say:

"In our opinion, under the facts as developed in this case, it would be a dangerous precedent to say that simply because some depositor of a bank should make away with moneys belonging to another a considerable period of time prior thereto that in order to hold the bank liable all that is necessary is to show that the one who made way with the money had at the time been a depositor at the bank and still carried a deposit therein. . . .

"Assuming for the sake of argument only, that Williams sold all of Westerman's wheat and deposited the whole of the proceeds in appellant's bank and then as trustee of these funds checked it out indiscriminately for current business expenses, the bank surely could not be held liable in any manner or under any conceivable circumstances unless it had knowledge that the funds so checked out as aforesaid were trust funds."

But let us not confuse or mistake the issue. No liability was sought to be imposed on the bank because of Williams' wrongdoing. This is not an action to impose a liability on the bank. It is simply a three-cornered fight between the bank, Westerman, and Turner to secure a sum of money in a debtor's checking account. And the evidence was amply sufficient that the checking account contained the proceeds of Westerman's wheat. The deposit account therefore was properly subjected to the satisfaction of Westerman's claim, which can no more be said to impose a liability on the bank than it imposes a liability on Turner, although both of them are excluded from that part of the fund because of Westerman's superior right thereto. Nor does this result from any supposed sanctity of a landlord's lien. It would have been just the same if Williams had come

into possession of anybody's money, derived from any source, and he had put it into his own bank account. The party whose money it was could follow it and impress a trust upon it superior to that of the bank so long as the bank permitted it to remain in its customer's checking account, and likewise superior to that of a garnisheeing creditor. (39 Cyc. 528; 26 R. C. L. 1232, *et seq.*)

The other matters argued by the bank have all been carefully considered, but need no discussion. The court can discern no material error in the record which would justify a reversal either in behalf of plaintiff or the bank; and the judgment is therefore affirmed.