Wiehl v. Winslow.

---

No. 25,797.

C. S. WIEHL, *Appellant*, v. C. L. WINSLOW et al., *Appellees*.

SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT—*Rent—Lien.* Where the rent of land is payable in a share of the crop, the landlord has an interest in and a lien on the crop from the time it is planted, and when the crop matures his interest ripens into full ownership, which entitles him to reclaim the property wherever he can find it or to recover its value from anyone who has converted it, by any appropriate judicial proceeding.

2. SAME—*Evidence—Weight and Sufficiency.* The evidence relating to a sale of the landlord's share of a wheat crop examined and held to be sufficient to take the case to the jury as to the liability of the defendants for taking possession and making disposition of the landlord's wheat.

Appeal from Barton district court; LeRoy E. QUINLON, judge. Opinion filed March 7, 1925. Reversed.

F. L. *Martin, John M. Martin,* and *James N. Farley,* all of Hutchinson, for the appellant.

*Lorin T. Peters, Andrew F. Schoeppel, A. L. Ferris,* all of Ness City, *Wm. Osmond, E. C. Cole,* and *T. B. Kelley,* all of Great Bend, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action by C. S. Wiehl against C. L. Winslow, the Ryan Grain Company and the Farmers Elevator Company to recover money due the plaintiff as rent on a crop of wheat. A demurrer to plaintiff's evidence was sustained by the trial court and judgment for defendants given, from which plaintiff appeals.

In 1917, J. C. Hopper, the owner of 4,500 acres of land known as the "Big Four ranch," rented the same to W. C. Stanley by written lease. By the terms of the lease Stanley was to pay, as rental, $500 for the grazing land, a dollar an acre on 1080 acres to be planted to feed crops, and for the land sown to wheat he was to deliver at Utica, the station nearest the ranch, as crop rental, one-fourth of all the wheat raised on the land. The plaintiff alleged that in 1922 Stanley, without delivering the share and paying the rentals due, delivered to the defendants altogether about 10,000 bushels of wheat of the cash value of $10,200. That defendants purchased the wheat with actual and constructive notice of the landlord's lien thereon. An accounting and judgment was asked against each defendant for the quantity of the crop purchased and taken by them. An assignment of the lease was made by J. C. Hopper to the plaintiff. It was shown that notice of the assignment had been given to the Farmers' Elevator Company, where the wheat was delivered. About the time of the assignment and prior to the sale of the wheat the plaintiff told the elevator company that if any of the wheat was brought to the elevator the plaintiff owned it, that Stanley was without authority to sell the same, and called the attention of the man in charge that he had a lien on the crop for rental. Of the wheat delivered at the elevator, 4,000 bushels was sold by C. L. Winslow to the Ryan Grain Company at McCracken, the sale being made the latter part of July at the price of $1.02 per bushel. When Winslow made the sale, a draft for the price, with the bill of lading attached, was drawn by Winslow in his own name, and the proceeds deposited in the bank to his own credit. When the wheat was brought to the Farmers' elevator, checks for the weight of the loads were made out in Stanley's name. It was run through the elevator and loaded out at a cost of two cents per bushel. The wheat was kept in separate bins in the elevator, and from these loaded into cars, in which it was shipped to the Ryan Grain Company.

The Farmers' elevator had notice of the claim of lien, and C. L. Winslow knew of the lease, knew that the wheat had been raised and harvested by Stanley, shipped the same in his own name, and deposited the proceeds of the wheat to his own credit in the bank. He received 90 per cent of the price of the wheat when the sale was made, and the balance due upon the sale was paid about December 1, 1922.

As to the Ryan Grain Company, it appears they purchased the

wheat without knowledge of the lease or lien, but it was informed in writing before the last payment was made of the landlord's lien on the wheat and his right of ownership in it. It, however, took the risk of paying the balance of the purchase price to one who was not the owner. Under the statute the landlord was the owner of his share of the wheat. It provides:

"When any such rent is payable in a share or certain portion of the crop, the lessor shall be deemed the owner of such share or proportion, and may, if the tenant refuse to deliver him such share or proportion, enter upon the land and take possession of the same, or obtain possession thereof by action of replevin." (R. S. 67-525.)

His title to the share did not become complete until the maturity of the crop. However, he had a distinct and individual interest in the crop from the time it was sown—an interest which he could protect. (*Sayers v. Railway Co.*, 82 Kan. 123, 107 Pac. 641.) This interest ripened into full ownership with the maturity of the crop, and he, like any other owner of property, was entitled to follow and reclaim his wheat or its value wherever he could find it. (*Bank v. Equity Exchange*, 113 Kan. 696, 216 Pac. 278. See, also, *Turner v. Williams*, 114 Kan. 769, 221 Pac. 267.) Being the owner of a share, he is entitled to obtain its possession by an action of replevin, or if it has been converted by another, may recover its value in any appropriate judicial proceeding. (*Safar v. Kasha*, 113 Kan. 608, 215 Pac. 1006.)

In respect to Winslow it may be said that he was well acquainted with Stanley, the tenant, knew that he was operating a ranch on a lease, and had reason to know that the 4,000 bushels of wheat delivered by Stanley to the elevator company had been grown on the ranch. He had notice of such facts as required him to make inquiry as to whether any part of the wheat belonged to the landlord. It was notice, sufficient at least to take the case to the jury on the question as to his liability for selling and disposing of wheat owned by the plaintiff. Under these circumstances he could not shut his eyes and claim that he did not know where the wheat came from.

As to the Farmers' Elevator Company, it had been specifically informed that the plaintiff was the owner of the wheat grown by Stanley and would insist on selling his own wheat. It had notice, too, not only of the landlord's lien, but it was also bound to know that upon maturity of the crop the landlord had full ownership of

the same, which he could assert against anyone who obtained possession of it. With this notice the elevator company took possession of the wheat, issued weight checks therefor, ran it through the cleaner for a compensation, stored it in separate bins in the elevator, then turned it over to Winslow to be transported and marketed. In delivering the wheat to Winslow it aided in the conversion of the wheat, although it had been warned that a part of it was owned by plaintiff.

The Ryan Grain Company had notice before the transaction of the purchase had been completed. About $400 of the purchase price had not been paid when the written notice of ownership of the plaintiff was received. To that extent at least it may be liable. If attention had been given to the notice and inquiry had been made as to the ownership of the wheat it would have found that one-fourth of the quantity purchased belonged to the plaintiff. Whatever may be the ultimate findings, it must be held that the evidence was sufficient to require the submission of the case to the jury as to the liability of each of the three defendants.

For error in sustaining the demurrer to plaintiff's evidence, the judgment is reversed and the case is remanded for a new trial.