(827 P.2d 796)

No. 66,672

COLORADO NATIONAL BANK-LONGMONT, *Appellant*, v. CHARLES B. FEGAN, *et al.*, *Appellees*.

—

Opinion filed March 6, 1992.

*John D. Gatz*, of Lowe, Starkey & Gatz, of Colby, and *Michael W. Sutton*, of Sutton, Kennedy & Hensley, P.C., of Boulder, Colorado, for the appellant.

*Bradley G. Rigor*, of Fairbanks, Rigor & Irvin, P.A., of Goodland, for the appellee Darrell Roths.

Before BRISCOE, C.J., BRAZIL, J., and TERRY L. BULLOCK, District Judge, assigned.

BULLOCK, J.: Plaintiff Colorado National Bank-Longmont (CNBL) appeals the district court's decision determining the ownership interests in a wheat crop between CNBL and defendant Darrell Roths. Three issues are presented.

The facts are essentially undisputed. CNBL loaned money to Charles and Patricia Fegan for farming purposes. CNBL filed suit against the Fegans when it deemed itself insecure on the loan. Roths was added as a defendant because of a possible interest he had in part of CNBL's collateral.

Roths was the onsite farm manager for the Fegans and took care of the cattle and the crops. In late 1989 or early 1990, the Fegans began having financial difficulties and Roths paid for cattle feed and labor out of his own funds. He told Greg Ludlow, an officer of CNBL, that he could not continue to do this, and Ludlow said, "[D]on't do anything rash." In April 1990, Roths learned that neither CNBL nor the Fegans planned to work the ground. Roths asked Ludlow if he could lease the land and plant a 1991 crop. Ludlow cautioned Roths to be careful. Roths leased the land from the Fegans under a crop-share lease with one-third of the crop to be paid to the Fegans as rent. This lease did not apply to any "growing crops as of 1 May 1990."

The 1990 wheat crop was harvested and sold with the proceeds going to CNBL under its secured interest in growing crops. Roths paid all costs of planting and growing the 1991 wheat crop without any financial assistance from CNBL. Ludlow and Roths did not discuss any interest CNBL might claim in Roths' share of the 1991 crop. Ludlow did tell Roths that CNBL would have a secured interest in the Fegans' one-third share of the crop.

In August 1990, Roths filed a motion for compensation for his performance of management services for the Fegans. Roths and CNBL entered into a "Release and Settlement Agreement" on October 4, 1990, covering those services.

CNBL was granted summary judgment and the trial court ruled CNBL had "a first priority perfected security interest in all of defendant, Charles B. Fegan's growing crops, crops to be grown, . . . all crop proceeds, . . . accounts and general intangibles, proceeds of accounts and general intangibles, . . . and is lawfully entitled to the foreclosure of its security interests

against all defendants." No appeal was taken from this decision. In ruling in open court, the judge asked: "[D]oes anybody want me to sign anything, your Motion for Summary Judgment?" Roths' attorney responded:

"Your Honor, while they're doing that; in light of what Mr. Gatz said on behalf of Darrell Roths, I want to indicate to the Court, and I've talked to both Mr. Gatz and Mr. Taylor; my client, as you know, has been out there taking care of this ground for some time under a written lease dated May 8 of 1990. He has been farming this ground as a lease for a one-third/two-third crop share, and he planted the wheat that is now in the ground, and did so certainly, you know, back in September when there was no—and worked it all summer—when there was no idea whether or not a sale would be had prior to next harvest, July of '91. And I just want the Court to be aware, as other counsel are aware, that Mr. Roths claims his two-thirds interest in this crop that's going to be harvested next July, and I'm sure that we could work out something amicable to all of us to take care of everyone's concerns. But we just wanted the Court to be aware that that is an issue out there."

CNBL's attorney replied: "I guess it would be fair to say that we're done, but maybe we're not done." CNBL's attorney then asked the court to rule on unrelated motions for the release of funds from previous sales of collateral and nothing further was said about the 1991 wheat crop.

On November 19, 1990, CNBL filed a "Claim of Security Interest/Lien In Growing Wheat Crop." The claim purported to be "notice to all counsel and their respective parties of CNBL's continuing claim to all 1991 growing crops." Roths responded with his claim to the same on November 26, 1990, "by virtue of a Lease Agreement." The trial court ruled in favor of Roths, finding that CNBL had "acquiesced" in the lease, that CNBL only had a valid lien on the one-third lessor's share of the 1991 crop, and that to allow CNBL to take the entire crop would result in unjust enrichment.

Preliminarily, we note: "Kansas law properly applies to a claim based on a security interest perfected in Kansas." *Farmers State Bank v. Production Cred. Ass'n of St. Cloud*, 243 Kan. 87, Syl. ¶ 2, 755 P.2d 518 (1988).

CNBL first argues its perfected security interest in crops growing or to be grown is superior to an ensuing interest created under a crop-share agreement. Roths counters that CNBL's se-

curity interest did not attach to the 1991 crop because no value was given by CNBL for the 1991 crop and the Fegans had no right to the lessee's two-thirds share of the crop. We agree. In our view, CNBL's security interest was in the Fegans' growing crops. Neither the Fegans nor CNBL had an interest in Roths' two-thirds share of the 1991 crop.

Under a crop-share arrangement, the lessor has an interest in and a lien upon the crop from the time it is planted and the interest only ripens to full ownership upon maturity of the crop. *Wiehl v. Winslow*, 118 Kan. 147, 149, 233 Pac. 802 (1925). The ownership interest of the lessor goes only to the amount or share due the lessor as rent. 118 Kan. at 149. The Fegans did not, and would not, have an ownership interest in the two-thirds interest in the crop and, because they lacked rights in the collateral, CNBL could not have a security interest attach to that crop. K.S.A. 1991 Supp. 84-9-203(1)(c).

CBL purports to cite *First Nat'l Bank v. Milford*, 239 Kan. 151, 718 P.2d 1291 (1986), to the contrary. However, *Milford* is distinguishable. In *Milford*, the owners of land and growing crops, already subject to a security interest, attempted to "lease" the land and crops to their son in exchange for which he was to make mortgage payments from his one-half share of the *proceeds* of the crops which the "lease" also purported to transfer. The parents retained all ownership interests in both land and crops. Our Supreme Court understandably held the sham lease did not defeat the bank's prior perfected security interest.

In the case at bar, only the Fegans' crops were mortgaged to CNBL. The only interest held by CNBL was in the crops under Article 9 of the Uniform Commercial Code—an act which expressly does not cover security interests in land. K.S.A. 84-9-104(j). Although the security agreement covered all of the Fegans' crops "growing or to be grown," it did not and could not cover the Fegans' interest in the land, which they were free to lease. Accordingly, the trial court was correct to find CNBL's interest attached only to the Fegans' one-third interest in the crop in question.

Second, CNBL contends the October 4, 1990, release and settlement agreement bars Roths' claim. CNBL did not raise this issue in its motion regarding its claim to the 1991 crop, but it

did introduce the issue during the March 7, 1991, hearing. Roths asserts CNBL had not made any claim to the 1991 crop as of October 4, 1990, and the claim was not covered by the agreement. We agree.

"The first question, as it is in the construction of any written instrument, is, what was the intention of the parties?" *Reynard v. Bradshaw*, 196 Kan. 97, 101, 409 P.2d 1011 (1966). Where the intent is clear from the written instrument, no further inquiry is necessary. 196 Kan. at 101.

Without undue elaboration, we have examined the settlement agreement and find it relates to management fees alone. In particular, one clause of the agreement refers to Roths' motion for management fees. Paragraph 4 states the purpose is to "satisfy ROTHS' claim for compensation" for Roths' "protection and preservation of [CNBL's] collateral." It is clear from these provisions that the intent of the parties is limited to claims connected to management fees.

Paragraph 6 of the agreement provides that Roths:

"does hereby release and forever discharge CNBL, its successors and assigns, and each of them, from any and all claims, demands, actions or causes of action, suits at law or in equity of whatsoever kind or nature whatsoever, whether known or unknown, whether contingent or unliquidated, whether for actual, special, consequential or punitive damages, which ROTHS [has], has had or may have against CNBL, which exist or may exist as of the date of this Release and Settlement Agreement."

CNBL argues this operates to bar any claim Roths asserts against CNBL's interest in the wheat crop. We disagree. As we have previously held, CNBL never had an interest in Roths' two-thirds interest in the 1991 wheat crop at issue and Roths is not required to assert a claim to acquire what he already owns.

CNBL's third and last argument is that Roths' claim is barred by the doctrine of res judicata (claim preclusion) and/or collateral estoppel (issue preclusion). CNBL asserts the trial court ruled on the issue of ownership of the crops on November 1, 1990, when it found CNBL had a perfected security interest in the Fegans' crops, growing or to be grown, and that Roths failed to raise the issue before that ruling.

Res judicata requires concurrence of four conditions: "(1) identity in the things sued for, (2) identity of the cause of action, (3)

identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made." *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988).

In the case at bar, there is no identity of the things sued for. In its pleadings and statements prior to November 1, 1990, CNBL asserted and was granted an interest in the Fegans' crops that were growing or to be grown. As previously observed, the crop at issue was not the Fegans' but Roths'. CNBL's first claim against Roths' crop was when Roths' attorney asserted the issue on November 1, 1990, and CNBL's attorney noted the litigation might not be finished. The issue of Roths' crop was not litigated until March 7, 1991. Roths' claim is not barred by res judicata.

It is for the same reason that the doctrine of issue preclusion, or collateral estoppel, does not apply. This doctrine requires, inter alia, a prior judgment on the merits. *Jackson Trak Group, Inc.*, 242 Kan. at 690. Roths raised the issue as to the 1991 crop at the summary judgment hearing on November 1, 1990, and even CNBL's attorney agreed the matter was still open. No ruling was made until March 7, 1991. Roths' claim is not barred by collateral estoppel.

In summary, we hold CNBL had no security interest in the two-thirds share of the 1991 crop that was planted, grown, and paid for by Roths. The settlement agreement does not bar Roths' claim to his crop, nor do the doctrines of res judicata or collateral estoppel.

Affirmed.