Mark R. JANITELL and Kelly
L. Janitell, Plaintiffs,

and

United Land Holdings, LLC, a Colorado
limited liability company, Intervenor–
Plaintiff–Appellant,

v.

The STATE BANK OF WILEY, a
Colorado banking corporation,
Defendant–Appellee,

and

Janitell Grain & Cattle Company,
Inc., Defendant–Appellant.

No. 95CA1392.

Colorado Court of Appeals,
Div. IV.

May 16, 1996.

Haligman and Lottner, P.C., Scott L. Levin, Denver, for Intervenor–Plaintiff–Appellant.

Lefferdink & Bullock, John S. Lefferdink, Lamar, for Defendant–Appellee.

Otto K. Hilbert, Colorado Springs, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Intervenor-plaintiff, United Land Holdings, LLC (ULH), and defendant Janitell Grain & Cattle Company (Janitell Grain) appeal the trial court's judgment in favor of defendant State Bank of Wiley (State Bank). The judgment was based on the court's determination that State Bank was entitled to the proceeds from the sale of a wheat crop and any associated government support payments. We affirm.

The dispute between the parties concerns the wheat crop grown by Janitell Grain during 1993 and 1994 on land that it had leased since 1991 from plaintiffs, Mark R. and Kelly L. Janitell (the Janitells). At the time Janitell Grain planted the crop in the fall of 1993, the property was the subject of foreclosure proceedings arising out of the Janitells' default on a promissory note secured by a deed of trust.

State Bank held a junior deed of trust and redeemed the property during the foreclosure proceedings. It received its certificate of redemption shortly after Janitell Grain planted the wheat crop.

The Janitells commenced this case, seeking to invalidate the foreclosure action. State Bank answered the Janitells' complaint and asserted various claims against the Janitells and other parties. It also sought and was granted leave to join Janitell Grain as a plaintiff.

The parties then entered into a stipulation that was made an order of the court. The stipulation provided that it "constitutes a full settlement of all claims, counterclaims and

cross-claims existing between plaintiffs, the State Bank of Wiley and the other parties in this action." It further provided that the public trustee could immediately issue State Bank a deed pursuant to its certificate of redemption and that, upon recording the public trustee's deed, "State Bank ... shall have good and merchantable title to the subject premises...."

As part of the stipulation, the Janitells were granted an option to purchase the property by January 14, 1994. It provided that if the Janitells failed to exercise that option, the Janitells and Janitell Grain were required to vacate the property by March 1.

The Janitells failed to exercise the option timely or to vacate the property. The trial court, as provided in the stipulation, entered an order authorizing the issuance of a writ of restitution directing the sheriff to evict the Janitells and Janitell Grain from the property.

State Bank then sold the property, which consisted of two separate parcels. The new owners harvested the wheat crop in late June and early July of 1994 and, pursuant to their purchase agreements, the grain was placed in storage pending the outcome of these proceedings.

At about this time ULH, which was organized and controlled by the brother of one of the Janitells, moved to intervene in the litigation. Together with its motion, ULH filed a verified complaint asserting that it was entitled to the proceeds of the wheat crop grown on one of the two parcels.

ULH's interest in the wheat crop was based on a security interest and judgment assigned to it by Fidelity State Bank (Fidelity). Fidelity had acquired the security interest in 1988, when the Janitells executed and delivered a promissory note to it together with a security agreement and a financing statement. The financing statement, which was properly filed with the clerk and county recorder, covered "[g]rowing crops now planted and/or hereafter to be planted and grown ... and contract rights ...."

Fidelity had obtained a judgment against the Janitells on May 5, 1992, which included the amount owed under the 1988 promissory note. Fidelity apparently never sought to enforce this judgment. Furthermore, even though in its complaint it had asserted rights to replevin and foreclosure, it likewise never sought to foreclose on its 1988 security interest. In 1993, however, the same year that Janitell Grain planted the crop in question, Fidelity filed a continuation of the financing statement with the clerk and county recorder. It then assigned the judgment and its security interest to ULH.

State Bank ultimately entered into a stipulation permitting ULH to intervene in the litigation. The parties then agreed to submit the case to the trial court by motions for summary judgment.

The trial court concluded that ULH did not have a security interest in the wheat grown on the parcel covered by Fidelity's security agreement and financing statement because the security agreement had been extinguished or merged into the 1992 judgment obtained by Fidelity. It also determined that Janitell Grain did not have an interest in the wheat crop because of its stipulation with State Bank. The trial court therefore concluded that State Bank was entitled to the wheat crop and the associated government support payments and entered summary judgment in its favor.

## I.

■ ULH contends that the trial court erred in denying its motion for summary judgment because the security interest it obtained from Fidelity was prior and superior to State Bank's interest in the wheat as owner of the property. We disagree.

To establish a security interest in current and future crops, three requirements must be met: (1) there must be a written security agreement signed by the debtor which provides a description of the crops growing and to be grown and the land concerned; (2) the creditor must have given value; and (3) the debtor must have rights in the crops. *See* §§ 4-9-203(1) & 4-9-204(1), C.R.S. (1992 Repl.Vol. 2); *see also* 4 J. White & R. Summers, *Uniform Commercial Code* § 31 (4th ed.1995).

Here, the Janitells had leased the land to Janitell Grain for cash rent due in three installments. While the Janitells had a contractual right to the rental payments under the lease, they had no contractual right to or other interest in any portion of crops Janitell Grain might choose to grow on the property. Thus, regardless of whatever security interest ULH may have had in collateral such as rental payments the Janitells received, and regardless of the extent of any protection provided such interests under Article 9 of the Uniform Commercial Code, *see* § 4–9–104(j), C.R.S. (1992 Repl. 2), its security interest did not attach to the wheat crop grown and owned by Janitell Grain. *See Colorado National Bank–Longmont v. Fegan,* 16 Kan. App.2d 662, 827 P.2d 796, 799 (1992)("Although the security agreement covered all of the [debtors'] crops 'growing or to be grown,' it did not and could not cover the [debtors'] interest in the land, which they were free to lease. Accordingly, the trial court was correct to find [the creditor's] interest attached only to the [debtor's] one-third interest in the crop in question."); *see also Midland Bean Co. v. Farmers State Bank,* 37 Colo.App. 452, 552 P.2d 317 (1976)(security interest did not attach to beans as collateral because debtor had no rights in the beans); *In re Sumner,* 69 B.R.758 (Bankr.D.Or.1986)(creditor's Article 9 claim limited to debtor's one-third share of crops under lease); *but see Southwest Georgia Production Credit Ass'n v. James,* 180 Ga.App. 795, 350 S.E.2d 786 (1986).

Therefore, albeit for different reasons, we conclude that the trial court properly determined ULH had no security interest in the 1993 wheat crop. *See People v. Aguirre,* 839 P.2d 483 (Colo.App.1992)(a correct judgment may be affirmed on reasoning different from that of the trial court).

## II.

■ Janitell Grain contends that it was entitled to the crop it planted in 1993 pursuant to § 13–40–105, C.R.S. (1987 Repl.Vol. 6A) and that the trial court erred in finding that it had waived any right or interest to the crop under the statute pursuant to its stipulation with the Janitells and State Bank. We disagree.

■ The intent of the parties to a contract is determined primarily from the language of the contract itself. *In re May,* 756 P.2d 362 (Colo.1988). A contract must be construed as a whole and effect must be given to each provision, if possible. *Lawrence Street Partners, Ltd. v. Lawrence Street Venturers,* 786 P.2d 508 (Colo.App. 1989).

As noted by Janitell Grain, the stipulation did not expressly provide for the disposition of the growing crops and the government support payments. However, the only reasonable interpretation of the stipulation is that Janitell Grain would not be entitled to the wheat crop and associated government support payments unless the Janitells timely exercised the option to purchase the property. This construction gives meaning to the parties' intent, by the stipulation, to settle the litigation completely and to create good and merchantable title in State Bank.

We therefore conclude that the trial court properly determined that by the stipulation Janitell Grain ceded any right to the crop it may have had under § 13–40–105.

Judgment affirmed.

MARQUEZ and KAPELKE, JJ., concur.